# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| Robert Goldsmith,<br><br>    Plaintiff,<br><br>v.<br><br>Correct Care Solutions, *et. al.*,<br><br>    Defendants. | Case No. 12 C 3738<br><br>Judge John Robert Blakey |

## MEMORANDUM OPINION AND ORDER

This is a Section 1983 case alleging a denial of medical care. Plaintiff Robert Goldsmith suffers bipolar disorder and mania and alleges that Defendants, five individuals who are nurses and other medical personnel at Will County Adult Detention Facility, denied him medications he had been prescribed to treat those medical conditions.

Three of the Defendants moved for summary judgment [98] and the other two joined in that motion ([101] and [104]). Defendants argue that Plaintiff failed to exhaust his administrative remedies before bringing this lawsuit on May 15, 2012 and thus this litigation is premature under the Prison Litigation Reform Act. For the following reasons, the motion [98] is granted.

## I.   Legal Standard

Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1060 (7th Cir.

2014). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In determining whether a genuine issue of material fact exists, this Court must construe all facts and reasonable inferences in the light most favorable to the nonmoving party. *See CTL ex rel. Trebatoski v. Ashland School District*, 743 F.3d 524, 528 (7th Cir. 2014).

II. **Facts**[1]

A. **Grievance Procedure**

The exhaustion issue before this Court involves the grievance procedures at Will County Adult Detention Facility, where Plaintiff was incarcerated. Inmates at the Facility received an Inmate Handbook upon arrival, which, in a section titled "Inmate Grievance Procedure," explained the grievance procedure inmates must follow. DSOF ¶¶ 14-15; Inmate Handbook [103-2] at 29-30.

Grievances are submitted using an Inmate Request Form (also known as "Form #22"). DSOF ¶ 17. According to the Inmate Handbook, inmates must submit a grievance within 48 hours of an incident; however, a grievance can be submitted after that time with an explanation. Inmate Handbook [103-2] at 29; *see also* PSOAF ¶ 7. The Handbook states:

---

[1] The facts are taken from the parties' Local Rule 56.1 statements. "DSOF" refers to Defendant's statement of undisputed facts [100], with Plaintiff's responses [125]. "PSOAF" refers to Plaintiff's statement of additional facts [124], with Defendant's responses [133].

2

> You must submit your grievance within forty-eight (48) hours of the incident or event you are complaining about. If you submit your grievance any later than 48 hours after the incident, you are required to explain the delay.

Inmate Handbook [103-2] at 29.

Once a grievance is filed, the entire grievance process, including appeals, typically takes no more than 36 days and, of course, can take less time. According to the Inmate Handbook, the inmate will receive a response to his grievance within 15 business days (which is at least 19 days) unless circumstances require more time. PSOAF ¶¶ 9-10; Inmate Handbook [103-2] at 30. The inmate has 48 hours to appeal any adverse decision, and the Deputy Chief will respond within 15 days unless circumstances require more time. PSOAF ¶¶ 11-12; Inmate Handbook [103-2] at 30. No additional appeals are permitted. Inmate Handbook [103-2] at 30.

Form #22 is a multi-purpose form not intended exclusively for grievances. *See* DSOF ¶ 18 (citing Form #22 [103-4]). It can also be used for other purposes, such as to change an inmate's visiting list, by checking the corresponding box. DSOF ¶ 18. To designate a grievance, an inmate must check the "COMPLAINT ABOUT TREATMENT / GRIEVANCES" box. DSOF ¶ 18. Form #22s are filled out in triplicate, with the inmate to retain the pink copy. DSOF ¶ 21.

### B. Purported Denial of Medical Care

Plaintiff was incarcerated at Will County Adult Detention Facility on March 8, 2011 (and remains there today) and, the same day, received a copy of the Inmate Handbook. DSOF ¶¶ 4, 16. Plaintiff did not receive any formal orientation about

the Facility's rules and regulations until more than one year after he arrived. PSOAF ¶ 17.

Before arrival at Will County Adult Detention Facility, Plaintiff had been diagnosed with bipolar disorder and mania. PSOAF ¶ 1. Plaintiff alleges that upon arrival, Defendants, who are nurses and other medical personnel, improperly denied him certain psychotropic medications he had been prescribed and was taking prior to being incarcerated to treat his medical conditions. DSOF ¶¶ 5-10. Plaintiff claims he did not receive his medications and suffered withdrawal symptoms during March 8 to 30, 2011. DSOF ¶ 11. At some point near that time (which Defendants argue was March 30, 2011), Dr. Jan Stampley, one of the Defendants and a psychiatrist, treated Plaintiff and told Plaintiff that he no longer required psychotropic medications. DSOF ¶¶ 9, 13.

Plaintiff does not recall whether he submitted a grievance and appealed any decision concerning his denial of psychotropic medications during or after March 8 to 30, 2011. DSOF ¶ 28; PSOAF ¶ 8. Plaintiff explained that he does not recall because he was experiencing "severe physical and psychological trauma" from the drug withdrawal. PSOAF ¶ 8. Plaintiff did not retain the pink copy if he in fact submitted a grievance. DSOF ¶ 29. Defendants issued a subpoena to Will County Adult Detention Facility and received Plaintiff's correctional records. DSOF ¶¶ 22-26. Those records do not contain a grievance relevant to this dispute. DSOF ¶¶ 23-26.

## III. Analysis

Under the Prison Litigation Reform Act, an inmate may not bring a federal suit about prison conditions unless he first has exhausted all available administrative remedies:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a); *see also Wagoner v. Lemmon*, 778 F.3d 586, 590 (7th Cir. 2015); *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011). A remedy is not exhausted if the inmate failed to abide by the prison's procedures for pursing relief. *Pavey*, 663 F.3d at 903. The purpose of the exhaustion requirement is to keep prisoner grievances in prisons and out of the courts, so that the primary responsibility for prison regulation remains with prison officials. *Begolli v. Home Depot U.S.A., Inc.*, 701 F.3d 1158, 1161 (7th Cir. 2012); *Fletcher v. Menard Correctional Center*, 623 F.3d 1171, 1174 (7th Cir. 2010).

The Seventh Circuit requires strict compliance with the Prison Litigation Reform Act's exhaustion requirement. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). Exhaustion is an affirmative defense, and the burden of proof is on Defendants. *Dole*, 438 F.3d at 809; *Pavey*, 663 F.3d at 903. This Court and not a jury determines whether Plaintiff exhausted his administrative remedies. *Wagoner*, 778 F.3d at 590.

Defendants argue that Plaintiff's claims are barred by the Prison Litigation Reform Act because his correctional records prove by omission that he did not file a

5

grievance about his purported denial of psychotropic medications before bringing this lawsuit. Plaintiff responds in two ways: arguing (1) that Defendants have not met their burden to prove that no grievance was filed; and (2) that administrative remedies were unavailable to him, thereby warranting an exception under the Prison Litigation Reform Act. This Court addresses each argument in turn.

### A. Plaintiff's Filing of a Grievance

As an initial matter, Plaintiff argues that Defendants rely on inadmissible evidence, namely, Plaintiff's correctional records (*see* DSOF ¶¶ 22-26), to show that he did not file a grievance. [123] at 5-6. Defendants did not submit any affidavit or other document authenticating the correctional records produced in response to Defendants' subpoena. This Court nonetheless can and does consider these records. Production of documents by a subpoena recipient satisfies the requirements for authentication under Federal Rule of Evidence 901, that is, that the records are what Defendants claim they are. *Minemyer v. B-Roc Representatives, Inc.*, 678 F. Supp. 2d 691, 709 (N.D. Ill. 2009); *Schmutte v. Resort Condominiums International, LLC*, No. 05 C 311, 2006 WL 3462656, at *14-15 (S.D. Ind. Nov. 29, 2006).

Furthermore, this Court can and does take judicial notice of the exact same correctional records filed with the Court in a prior case involving this same Plaintiff. *See Fletcher*, 623 F.3d at 1173 (taking judicial notice of prior litigation involving same litigant). That earlier case is captioned: *Goldsmith v. Zolecki*, Case No. 12 C 3965 ("*Goldsmith I*").

In *Goldsmith I*, the defendant correctional officer successfully moved for summary judgment on the issue of exhaustion. *Goldsmith v. Zolecki*, No. 12 C 3965, 2013 WL 5699302, at *1 (N.D. Ill. Oct. 18, 2013). Plaintiff testified in *Goldsmith I* that he filed a grievance about the subject matter of that dispute, but lacked the pink copy of the grievance. *Id.* at *5. In response, the defendant successfully argued that no grievance was filed based on his review of Plaintiff's correctional records. *Id.* The defendant attached those records—the same 81 Form #22s from March 8, 2011 to May 31, 2012 that are attached here (*see* [103-3])—to his motion for summary judgment. *Goldsmith I*, No. 12 C 3965, DE 21-4. The defendant in *Goldsmith I* also authenticated these records through a declaration from a records custodian at Will County Adult Detention Facility. The custodian said she had searched Plaintiff's classification file, which is where inmate grievances are maintained. Miller Declaration ¶¶ 3-4, attached to *Goldsmith I*, No. 12 C 3965, DE 21-4.

Turning to the merits, Plaintiff does not argue that he filed a grievance, unlike in *Goldsmith I*, but rather disputes whether Defendants have met their burden to prove that no grievance was filed. The undisputed record shows the following. Plaintiff does not recall whether he filed a grievance and, if he did file a grievance, whether he appealed any adverse decision. [123] at 1, 3, 7; DSOF ¶ 28; PSOAF ¶ 8. If any grievance was filed, Plaintiff also failed to keep his pink copy. [132] at 5; DSOF ¶¶ 21, 29. Defendants subpoenaed Plaintiff's correctional records, which contain many Form #22s, but none relevant to this litigation. DSOF ¶¶ 22-

7

26. Thus Plaintiff's grievance (if it ever existed) is not in the record before this Court.

Defendants have met their burden of proof at summary judgment based on this record. Indeed, this Court agrees with the other Courts in this District that, when confronted with a correctional records file that does not contain a grievance, require an inmate to offer more than just his testimony to show a genuine dispute about whether a grievance was, in fact, filed. *E.g.*, *Goldsmith I*, 2013 WL 5699302, at *5; *Richmond v. Dart*, No. 11 C 65, 2012 WL 6138751, at *2 (N.D. Ill. Dec. 11, 2012); *see also Roberson v. Engelson*, No. 11 C 9318, 2013 WL 1749384, at *2, 5 (N.D. Ill. April 23, 2013). The record here is even less compelling than in *Goldsmith I* and *Richmond*, where the inmates, including this Plaintiff, claimed that they had actually filed a grievance. Nor has Plaintiff provided any compelling reason for this Court to believe that the correctional records are incomplete—particularly in light of the declaration in *Goldsmith I* explaining how the search for Plaintiff's grievances was conducted properly.

Plaintiff last cites to the Seventh Circuit's unpublished decision in *Santiago v. Anderson*, 496 F. App'x 630, 636 (7th Cir. 2012). *See* [123] at 5. *Santiago*, however, did not involve the exact issue here and, in any event, the Seventh Circuit found that the inmate there had not exhausted his administrative remedies. The case thus is immaterial to the issues here.

## B. Availability of Grievance Process

An inmate is excused from filing a grievance if no administrative remedy is available to him. *Fletcher*, 623 F.3d at 1173. Proving this is a demanding task. Plaintiff must prove that he did all he could to avail himself of the administrative process, yet could do nothing more. *See Dole*, 438 F.3d at 809-10.

Here, Plaintiff argues that no administrative remedy was available for three reasons: (1) he did not know about the grievance procedure; (1) he had an incapacity that prevented him from filing a grievance; and (3) filing a grievance would have been futile. [123] at 6-10. This Court addresses each argument in turn.

### 1. Knowledge

Plaintiff argues that he did not know how to avail himself of the grievance procedure at Will County Adult Detention Facility in March 2011 because no one at the Facility explained the procedure to him. [123] at 7.

Plaintiff's argument fails as a matter of law. Setting aside the fact that Plaintiff received the Inmate Handbook explaining the grievance procedure upon arrival at Will County Adult Detention Facility, DSOF ¶ 16, an inmate's lack of knowledge of a prison's grievance procedure does not excuse compliance with the PLRA. *Yousef v. Reno*, 254 F.3d 1214, 1221 (10th Cir. 2001); *Chelette v. Harris*, 229 F.3d 684, 688 (8th Cir. 2000). According to these decisions, the plain language of the PLRA does not recognize this exception. The Seventh Circuit has adopted this analysis—albeit in an unpublished opinion. *Twitty v. McCoskey*, 226 Fed. App'x 594, 595-96 (7th Cir. 2007). Courts in this District likewise have adopted the

reasoning from *Yousef* and *Chelette*. *E.g.*, *Jamison v. Franko*, No. 12 C 98, 2013 WL 1093118, at *4 (N.D. Ill. March 15, 2013) (Guzman, J.); *Roberson*, 2013 WL 1749384, at *5 n.3 (Tharp, J.); *Smith v. Hallberg*, No. 11 C 188, 2012 WL 4461704, at *7 (N.D. Ill. Sept. 25, 2012) (Bucklo, J.); *see also Padilla v. Bailey*, No. 09 C 8068, 2011 WL 3045991, at *4 (N.D. Ill. July 25, 2011) (St. Eve, J.). This Court finds the reasoning of these cases persuasive.

### 2. Incapacity

Plaintiff argues that he could not file a timely grievance, namely, on or before March 10, 2011 for medication missed on March 8, 2011, because he was suffering hallucinations and other drug withdrawal symptoms. [123] at 6-9. Those symptoms did not subside, according to Plaintiff, for two to three weeks (until approximately March 29, at latest). [123] at 7.

The fundamental flaw in Plaintiff's argument, however, is that he had beyond March 10, 2011 to file a grievance, but did not. First, Plaintiff could have filed a timely grievance once his symptoms subsided. Inmates at Will County Adult Detention Facility are required to file grievances within 48 hours of an incident *unless* they explain the reason for the delay. Inmate Handbook [103-2] at 29. Plaintiff, accordingly, could have filed a grievance on March 30, 2011, explaining that he could not have filed a grievance earlier because his drug withdrawal symptoms had only then subsided. He failed to do so.

Second, Plaintiff's alleged denial of medical care extended beyond March 8, 2011. It continued until March 29, 2011. DSOF ¶ 11; *see also* Amended Compl. [51]

10

¶¶ 3-4. Plaintiff could have filed a grievance on March 30, 2011, when his withdrawal symptoms had subsided, for denials of psychotropic medication over the previous 48 hours, on March 28 and 29. Once again, he failed to do so.

Perhaps filing a grievance after Plaintiff's withdrawal symptoms had subsided could be considered futile because there was no longer an injury and no longer a need for medication. But it is settled law that futility is not an exception to the Prison Litigation Reform Act's exhaustion requirement. *Fletcher*, 623 F.3d at 1173; *Massey v. Wheeler*, 221 F.3d 1030, 1034 (7th Cir. 2000). A grievance is required so long as the prison has "authority to take some action in response to [it]." *Larkin v. Galloway*, 266 F.3d 718, 723-24 (7th Cir. 2001). Even though a grievance filed on or after March 30, 2011 cannot remedy past harm, Will County Adult Detention Facility nonetheless could have taken "some action" in response, such as disciplining Defendants for their purported role in the denial of medication. *See id.*

Because Plaintiff could have filed a grievance once his symptoms subsided, he has not exhausted his administrative remedies. And this conclusion holds even though the Will County Adult Detention Facility may have ultimately rejected Plaintiff's explanation for filing a late grievance. *See McCoy v. Gilbert*, 270 F.3d 503, 510-11 (7th Cir. 2001). The Seventh Circuit in *McCoy* found that an inmate had not exhausted even though the 20-day deadline to file a grievance lapsed. *Id.* at 510. The inmate could have invoked the "hardship exception" to the 20-day deadline and presented a valid reason for not meeting it. *Id.* at 510-11.

Even if the grievance procedure at Will County Adult Detention Facility lacked a safe harbor provision, Plaintiff could not satisfy the onerous standard for proving that administrative remedies are unavailable due to physical incapacitation. As Plaintiff's own case shows (*see* [123] at 7), the incapacity exception is reserved for extreme cases, principally where the inmate is "unconscious" or "fully dependent on others for all activities of daily life." *Richmond*, 2012 WL 6138751, at *4 (surveying the case law from this Circuit).

Here, Plaintiff has not met that standard for at least part of the time period when he allegedly was denied his medications. This is shown by Plaintiff's own conduct. During March 19 to 31, 2011, Plaintiff completed and filed at least 10 Form #22s—the same forms used to file grievances. DSOF ¶¶ 18, 23. Plaintiff has supplied no explanation for why he could not exert the same effort and submit a grievance. Plaintiff argues he did not know that he could submit a grievance on a Form #22 (*see* [123] at 7-8), but this Court already has rejected that argument. In sum, Plaintiff's ability to submit other requests on Form #22s shows that he was aware of the procedure and not "dependent on others for all activities of daily life." *Richmond*, 2012 WL 6138751, at *4.

### 3. Imminent Danger

Plaintiff last argues that the imminent danger exception to exhaustion applies; and, in support, relies on *Fletcher*, 623 F.3d at 1173. [123] at 9-10. But *Fletcher* does not go as far as Plaintiff would like.

The Seventh Circuit in *Fletcher* held that administrative remedies are unavailable when they cannot provide relief in time to an inmate who is in imminent danger of a serious injury. *Id.* at 1173-74. The Court gave the example of an inmate facing a threat of being killed tomorrow but faced with a grievance procedure that takes two weeks to complete. *Id.* Those facts were not present in *Fletcher*, however. Instead, the inmate in *Fletcher* alleged that he was injured when certain prison officials used excessive force when transferring him between cells and denied medical care for these and other ailments. *Id.* at 1172. The inmate filed an emergency grievance, but initiated litigation before receiving a response. *Id.* at 1174.

Based on this record, the Seventh Circuit affirmed summary judgment because the inmate had available administrative remedies which he failed to exhaust. *Id.* at 1174-75. The Court emphasized that the imminent danger exception does not excuse a prisoner from exhausting remedies tailored to imminent dangers, that is, the emergency grievance process. *Id.* at 1175. Also significant to the Court's decision was the fact that there was no reason to think that the prison's grievance procedure would take longer than the judicial procedure. *Id.*

Here, Plaintiff's drug withdrawal symptoms, while serious, certainly fall short of the imminent danger required under *Fletcher*. And if the goal is procuring timely medical care, there is no reason to think that resorting to litigation would be a more expedient option than the Will County Adult Detention Facility's grievance procedure, even though no emergency process apparently exists there, PSOAF ¶ 13.

13

*See Fletcher*, 623 F.3d at 1175. The grievance procedure here requires 15 business days for an initial response from the Facility and typically no more than 36 days to complete. PSOAF ¶¶ 9-12. By comparison, federal litigation requires more time to resolve matters (for example, this litigation has been pending since May 15, 2012).

The Seventh Circuit in *Ford v. Johnson*, 362 F.3d 395, 400 (7th Cir. 2004), found that administrative remedies were still available despite a grievance procedure that took months longer to complete than the one here. Specifically, the Court found that an inmate, who alleged that he was beaten without provocation and denied medical care, did not exhaust his administrative remedies even though he had waited six months for the prison administration to resolve his grievance appeal and thereby complete the administrative review process. *Id.* at 397, 400. Like it did in *Fletcher*, the Seventh Circuit in *Ford* observed that "six months is prompt compared with the time often required to exhaust appellate remedies from a conviction." *Id.* at 400.

Moreover, this also is not a case where Plaintiff immediately sought to avail himself of the emergency relief afforded by the federal courts, such as an *ex parte* temporary restraining order under Rule 65. That further belies Plaintiff's argument that he required immediate access to the Courts to redress his denial of psychotropic medications.

## IV. Conclusion

Defendants' motion for summary judgment [98] is granted. This case is dismissed without prejudice pursuant to *Ford*, 362 F.3d at 401.

Dated: March 31, 2015

Entered:

_____
John Robert Blakey
United States District Judge